UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROSELINE ATKINSON,
               Plaintiff,                           02 CV 2713 (SJ)

     -against-
                                                          MEMORANDUM
                                                          and ORDER

NEW YORK CITY BOARD OF EDUCATION,
               Defendant.
------------------------------------------------------------X

APPEARANCES:

LAW OFFICE OF PHILIP AKAKWAM
1203 Nostrand Avenue
Brooklyn, NY 11225
By:    Philip Akakwam
Attorney for Plaintiff

NYC LAW DEPARTMENT
OFFICE OF CORPORATION COUNSEL
100 Church Street, Room 2-300
New York, NY 10007
By:    Gerard Schiano-Strain
         Eric Jay Eichenholtz
Attorneys for Defendants

WILSON ELSER MOSCOWITZ EDELMAN & DICKER
150 East 42 Street
New York, NY 10017
By:    Celena R. Mayo
Attorney for Defendants

JOHNSON, Senior District Judge:

        Roseline Atkinson ("Plaintiff") filed this action against the New York City Board

1

of Education ("Defendant" or "the Board") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Civil Rights Act of 1866, as amended 42 U.S.C. §§ 1981 and 1983, and the New York State Human Rights Law § 296, alleging that Defendant discriminated against her and unlawfully terminated her employment because of her race and national origin and that Defendant retaliated against her after she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff seeks reinstatement into her previous, or a substantially similar, position, back pay, compensatory damages, injunctive and declaratory relief. Presently before this Court is Defendant's Motion for Summary Judgment. For the reasons stated herein, Defendant's Motion is GRANTED and the Complaint is dismissed in its entirety.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the movant to establish the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.

P-049

242, 248 (1986).

The Court's responsibility in assessing the merits of a summary judgment motion is not to try the issues of fact, but rather to "'determine whether there *are* issues of fact to be tried.'" Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). In deciding whether to grant a motion for summary judgment this Court must view all inferences drawn from the materials submitted to the Court in the light most favorable to the non-moving party, and accept the non-moving party's allegations as true. Ortiz v. Rosner, 817 F.Supp. 348, 349–350 (S.D.N.Y. 1993) (citing Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir.1992)). The non-moving party must be given the benefit of the doubt when the parties' assertions are in conflict. Id.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Black woman of Nigerian national origin, began her employment with the Board as a substitute teacher in March 1996. (Am. Compl. ¶¶ 6, 13.) In September 1998, the Board hired Plaintiff as a Preparatory Provisional Teacher in Special Education. Plaintiff alleges that in 1998, while she and Yvonne Tavares ("Tavares") were graduate students at Lehman College and prior to Tavares becoming principal of P.S. 168X where Plaintiff taught, Tavares and another Board employee made various "race and national-origin related remarks," such as that "[f]oreigners were taking away jobs" and "[i]f you don't like all these things, go back to Nigeria." (Id. ¶ 17; see

P-049

Atkinson Dep. 50:12-19; 51:3-7; 54:2-6; 59:17; 63:1-25.)

Plaintiff claims that, subsequent to Tavares' appointment as the Interim-Acting Principal of P.S. 168X in August 1999, Tavares "threatened to get rid of all foreigners teaching in her school" and told Plaintiff "there is a place for you in Brooklyn where your own type of people work." (Am. Compl. ¶¶ 17-22.) Although Plaintiff had always received positive evaluations since beginning her work in 1996, starting in July 1999, Plaintiff received several adverse write-ups and unsatisfactory ratings on her performance evaluations over which "she was forced to spend a lot of time in the grievance process" and which Plaintiff contends were unjustified and in furtherance of Tavares' alleged "goal of writing [P]laintiff out of the system." (Id. ¶¶ 19-23.) According to Plaintiff's Complaint, in July and October 1999, "[P]laintiff complained to the [Board's] personnel department and the Equal Employment Office about the harassment and discrimination" and "[Tavares] threatened that [P]laintiff's situation would get even worse for complaining to the Board." (Id. at ¶ 32.)

Plaintiff contends that Tavares treated her differently from other teachers in that: (1) Tavares made Plaintiff punch in and out daily, whereas no other teacher in Plaintiff's unit was required to do so (Id. ¶ 6); (2) Tavares required Plaintiff to use a punch card instead of a sign-up sheet because punch cards were viewed as "unprofessional" (Pl.'s Local Rule 56.1 Statement at ¶ 27; see Tavares Dep. 226:21-22); (3) Plaintiff was forced to go to a nearby school to punch in and out because P.S. 168X lacked the requisite

facility (Am. Compl. ¶ 6); and (4) Tavares compelled Plaintiff "to observe two junior teachers" while "[n]o other teacher was made to formally observe a junior teacher's teaching." (Am. Compl. ¶ 26; Pl.'s Local Rule 56.1 Statement at ¶ 30.) Plaintiff also claims that Tavares subjected her to a hostile work environment by "encourag[ing] other [Board] employees . . . to harass, demean, and belittle [P]laintiff in the presence of other staff and students." (Am. Compl. ¶ 27.)

Plaintiff also claims that on or about March 10, 2000, "in her eagerness to fulfil[l] her threat to get rid of [P]laintiff, Tavares assumed the powers of the Chancellor [of the Board] and terminated [P]laintiff, a probationary teacher without a proper investigation [of an allegedly false accusation of corporal punishment] by the appropriate body," "placed [P]laintiff's name on the ineligible list" and "removed [Plaintiff's] name from the payroll" despite Tavares' alleged knowledge that "[P]laintiff was a regularly appointed teacher who can only be discontinued by the Chancellor." (Id. ¶ 37.) Plaintiff maintains that, although she prevailed in arbitration regarding the corporal punishment accusation, the Board has failed to reinstate Plaintiff because of her race and national origin. (Id. ¶ 39.) On June 3, 2000, the Board's Chancellor informed Plaintiff that her "probationary service as a Teacher of Social Studies is terminated as of the close of business on March 10, 2000." (Schiano-Strain Decl. Ex. R.)

P-049

In an EEOC charge dated March 1, 2001,[1] Plaintiff alleged that she had been discriminated against based on her national origin in that her termination by the Board's Chancellor was "the highlight of a practice of discrimination against [her] by agents of the Board" and that "retaliation as well as race [] are also issues." (Schiano-Strain Decl. Ex. Y.) By letter dated June 4, 2001, the Board's Chancellor informed Plaintiff of its final decision that "[a]ny and all licenses or certificates to teach in New York City held by you are hereby terminated effective close of business March 14, 2000, the date that your name was placed on the Ineligible/Inquiry List." (Id. Ex. X.) On February 1, 2002, the EEOC issued Plaintiff a right to sue letter. Plaintiff *pro se* commenced the instant action on April 30, 2002; on March 11, 2003, Plaintiff filed an Amended Complaint with the assistance of counsel.

On December 23, 2004, Defendant moved for summary judgment on the grounds that: "(1) [P]laintiff's Title VII and state law claims are time-barred by the applicable period of limitations; (2) this [C]ourt lacks subject matter jurisdiction over [P]laintiff's claims based on the doctrine of issue preclusion (collateral estoppel) and the Rooker-

---

[1] Contrary to Defendant's assertion that Plaintiff's EEOC charge is dated March 31, 2001 (Def.'s Local Rule 56.1 Statement at ¶ 35), the Court takes judicial notice of the fact that the EEOC charge is dated March 1, 2001. (Schiano-Strain Decl. Ex. Y.) Indeed, defense counsel concede as much. (Id. at 4 (describing appendixed exhibits relied upon and cited in support of Defendant's motion, which Defendant has labeled, "Equal Employment Opportunity Office Charge of Discrimination form *Signed and Dated March 1, 2001*") (emphasis added). The Court is quite baffled by Plaintiff counsel's failure to highlight and contest Defendant's erroneous assertion, especially in light of the fact that Defendant's motion rests heavily on the argument that Plaintiff's federal claims are time-barred due to the arguably late EEOC filing.

6

Feldman doctrine; (3) [P]laintiff fails to allege a *prima facie* case of race discrimination under Title VII; (4) [D]efendant has articulated a legitimate non-discriminatory reason for its decision for its decision to terminate [P]laintiff; (5) [P]laintiff cannot show that [D]efendant's reason for its action was pretextual or that the real reason was discriminatory or retaliatory; (6) [P]laintiff fails to allege a *prima facie* case of retaliation under Title VII; and (7) [P]laintiff cannot establish municipal liability under 42 U.S.C. §§ 1981 and 1983." (Def.'s Mem. Law. Supp. Summ. J. at 1-2.)

## DISCUSSION

### I. Timeliness of Plaintiff's Federal Claims

Defendant contends that Plaintiff's federal claims are time-barred due to Plaintiff's failure to file a complaint with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory action.[2] (Id. at 2.) Defendant contends that the relevant date of the alleged discriminatory action is March 10, 2000, the date Plaintiff's name was placed on the Board's ineligible list. (Id. at 3.) Plaintiff argues that her Title VII claims are not time-barred because "[t]he discriminatory action of termination occurred on or about June 3, 2000 when the Chancellor who has the authority to terminate [P]laintiff advised her of his exercise of that power to terminate her" (Pl.'s Mem. Law Opp'n Summ. J. at 10), and that "Tavares' letter of March 9, 2000 purporting to terminate [P]laintiff effective March 10, 2000 cannot serve as the basis to

---

[2] The parties apparently agree that the 300-day period applies here.

P-049

compute the limitations period for filing [the] EEOC charge" since only the Chancellor had the authority to terminate Plaintiff. (Id. at 11.) According to Plaintiff, her reference in the Amended Complaint to Tavares' letter "was intended to show the discriminatory animus that characterized [Tavares'] treatment of [P]laintiff." (Id.)

The Court finds that Plaintiff's discrimination and retaliation claims accrued on March 10, 2000, the date Plaintiff's name was placed on the Board's ineligible list. "It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000) (citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)); see also Miller v. Int'l Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985) ("The 300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge.") In this case, Plaintiff evidently considered Tavares' March 2000 decision to place her name on the ineligible list as part of a discriminatory action because her EEOC charge refers to the Chancellor's June 2000 letter as the "*highlight* of a practice of discrimination" stemming from September 1998. (Schiano-Strain Decl. Ex. Y (emphasis added).) The 300-day time limit began to run at the moment that Plaintiff was notified of the Board's decision to terminate her by placing her name on its ineligible list, and thus Plaintiff's claim is time-barred.

8

The untimely discriminatory discharge claim is not salvaged by the fact that the Chancellor did not inform Plaintiff of its decision to terminate Plaintiff until June 3, 2000. The relevant case law makes clear that the relevant consideration for accrual purposes is notice to a plaintiff of discriminatory animus rather than the consequences of the alleged discrimination. See O'Malley v. GTE Service Corporation, 758 F.2d 818, 820 (2d Cir. 1985) ("In Chardon v. Fernandez, 454 U.S. 6 (1981), and Delaware State College v. Ricks, 449 U.S. 250 (1980), the Supreme Court determined that the *timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision*, not from the date the decision takes effect.") (emphasis added).

Even assuming *arguendo* that Tavares' March 2000 letter cannot be deemed "definite notice" of termination in that Tavares lacked the requisite authority to terminate Plaintiff, a probationary employee, Plaintiff's federal claims would be time-barred nonetheless. New York state law provides that "a decision to terminate probationary employment is final and binding on the date the termination becomes effective." Johnson v. Bd. of Education of the City of New York, 737 N.Y.S.2d 392, 393 (2nd Dep't 2002).[3] Here, Plaintiff's termination became effective on March 14,

---

[3] Plaintiff's attempt to distinguish Johnson v. Bd. of Education of the City of New York, 737 N.Y.S.2d 392 (2nd Dep't 2002), on the basis that Johnson's termination was prospective whereas Plaintiff's effective date of termination was retroactive to the Chancellor's letter, is unavailing because Plaintiff fails to cite any case law in support of her implicit proposition that a retroactive termination would have the effect of tolling the limitations period. Equally meritless is Plaintiff's argument that "[b]ecause the [C]hancellor was the only proper authority to terminate plaintiff, all prior actions and letters by Tavares

9

2000. (Schiano-Strain Decl. Ex. X.) Plaintiff did not file her EEOC charge until March 1, 2001, after the expiration of the applicable 300-day period. Therefore, this Court cannot consider any claims regarding events that occurred before May 5, 2000. Accordingly, Plaintiff's Title VII are time-barred under either date (March 10, 2000, when Tavares, whom Plaintiff claims was motivated by discriminatory animus, placed Plaintiff's name on the Board's ineligible list, or March 14, 2000, when Plaintiff's termination became effective) and must be dismissed in their entirety.

## II. **Plaintiff's State Claims**

Given this Court's dismissal of all of Plaintiff's federal claims, it declines to exercise pendant jurisdiction over Plaintiff's state law claims. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-65 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994); Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir. 1975); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Accordingly, Plaintiff's state law claims are hereby dismissed.

---

and Erber purporting to have terminated her were improper and cannot be used as the basis for computing the statute of limitations." (See Pl.'s Mem. of Law Opp'n Summ. J. at 11.) It is plainly obvious from all of Plaintiff's submissions that Plaintiff's federal claims are grounded in Tavares' alleged impropriety in purporting to terminate Plaintiff without the requisite authority. Thus, Plaintiff's arguments that this Court should disregard Tavares' March 2000 decision to forward Plaintiff's name for ineligibility are belied by Plaintiff's own concession that her reference to Tavares' March 2000 letter "was intended to show the discriminatory animus that characterized her treatment of [P]laintiff." (Id.) Moreover, Plaintiff has failed entirely to alert the Court to any case law under which Plaintiff's Title VII claims may be considered timely.

P-049

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED in its entirety as time-barred.

SO ORDERED.
Dated: May 10, 2005
      Brooklyn, NY

_____
                       Senior U.S.D.J.

P-049